TAYLOR *v.* CROWE.

4-3616

Opinion delivered December 3, 1934.

*Arthur L. Adams,* for appellants.

*J. C. Young, Jr.,* for appellee.

SMITH, J. The Watson Investment Company owned a number of farms which were sold March 29, 1932, to the American Trust Company under a decree foreclosing a mortgage given by the investment company to the trust company. The trust company purchased the lands at this sale, and gave the investment company an option to repurchase the lands at any time prior to January 1, 1933. The trust company became insolvent, and its assets, including these lands, were taken over for liquidation by the State Banking Department, and George A. Knox, as Deputy Bank Commissioner, was placed in charge for that purpose. Knox found it necessary to employ, and he did employ, A. B. Womack to take charge of the lands to collect the 1932 rents, and to find tenants for the year 1933.

W. P. Crowe rented a portion of one of these farms for the years 1931 and 1932, and desired to continue his

tenancy for the year 1933, but Knox and Womack adopted the policy of not renting any of the land for 1933 to any tenant in possession who was indebted to the investment company, for the reason that such unsatisfied indebtedness might result in a foreclosure proceeding which would take from such tenant his farming implements necessary for the cultivation of the land. Crowe was indebted to the Investment Company, and was told by Womack in the summer of 1932 what his policy would be in regard to renting land to the tenants in possession, but he also told Crowe that preference would be given to the tenants who paid their accounts to the Investment Company. Crowe told Womack that he desired to rent land for the year 1933, and that it was his intention to pay and that he would be able to pay his account, and he did pay it about the close of the year 1932.

It is an undisputed fact that Womack, representing Knox, the liquidating agent, made collections of the 1932 rents and made contracts with numerous tenants for 1933, but both Knox and Womack testified that the extent of Womack's authority to rent land for 1933 was to negotiate contracts for that purpose, which were not final and binding until reported to and approved by Knox. It is also an undisputed fact that Crowe never discussed the matter at any time with Knox, who testified that no contract for 1933 with Crowe was ever reported to or approved by him. Knox admitted, however, that only a few of the numerous other tenants who rented land for 1933 had seen him personally, and these contracts had been consummated and became effective upon his approval of rental contracts which Womack had negotiated and had submitted for his approval.

There is a conflict in the testimony of Womack and Crowe as to whether they entered into a final and complete contract for the year 1933, but that conflict has been settled in Crowe's favor by the verdict of the jury under instructions correctly declaring the law as to that issue of fact. The contract, if one was made, was an oral contract, but so also were the contracts with all the other tenants.

Knox approved the contract which Womack reported he had made for the year 1933 with another party covering the land which Crowe claims to have previously rented from Womack for that year, and, upon the refusal of Crowe to surrender possession to that party, this suit was brought to dispossess Crowe, who filed an answer alleging his right to cultivate the land for the year 1933. Crowe was dispossessed in the manner authorized in unlawful detainer cases, and he prayed judgment for damages in the sum of $325 to compensate the alleged wrongful eviction. At the trial from which this appeal comes there was a verdict and judgment in Crowe's favor in the sum of $200.

For the reversal of this judgment it is insisted (1) that Crowe had no contract with an agent of the Bank Commissioner authorized to contract; (2) that the contract under which he claims was void for uncertainty, and (3) that the verdict is excessive.

Upon the first proposition it may be said, in addition to what has already been said, that Crowe made two visits to the office of Knox, the liquidating officer, in Jonesboro, and there saw Mr. Womack, who had charge of the lands for purposes already stated. Crowe was not advised that the contract which he testified he had made with Womack required Knox's approval to become effective. Under these facts the jury was fully warranted in finding that Womack's action in making the contract which Crowe testified was made was within the apparent scope of Womack's admitted agency. In the case of *American Southern Trust Co.* v. *McKee,* 173 Ark. 162, 293 S. W. 50, we said: " 'Apparent authority in an agent is such authority as the principal knowingly permits the agent to assume, or which he holds the agent out as possessing, such authority as he appears to have by reason of the authority which he has; such authority as a reasonably prudent person, using diligence and discretion in view of the principal's conduct, would naturally suppose the agent to possess.' *Ozark Mutual Life Association* v. *Dillard,* 169 Ark. 136, 273 S. W. 378."

This statement of the law disposes also of the contention which appellant makes that the jury should have

been specifically charged as to Crowe's duty to make inquiry as to Womack's actual authority. If Womack was acting within the scope of his apparent authority, as the jury has found, there was no obligation on Crowe's part to make further inquiry.

As to the second contention, that the contract which Crowe claims was made was void for indefiniteness, the facts as testified by Crowe are as follows: He agreed to pay as rent for all land planted in cotton one-fourth of the cotton grown thereon, and to pay in cash for all other land. Crowe's testimony in regard to the cash rent was to the following effect: The cash rent per acre was not agreed upon, but Womack stated to him that: "They would make it right on the corn land," and further that Womack stated: "We are going to be reasonable with you." It is a matter of common knowledge that renting land for an agreed share of the crop is frequently done, and presents no difficulty or uncertainty in ascertaining the shares of the landlord and the tenant respectively. Rent to be paid on the remainder of the land is less certain, but not so uncertain as to render the contract void for indefiniteness. That is certain which may be made certain. Crowe's testimony that the rent was to be "right" and "reasonable" is, in effect, that it should be the reasonable, ordinary and customary rent for such land. Such rent for this and for similar land is a matter about which any farmer in the neighborhood would have been able to testify. It was a fact easily to be ascertained, had any disagreement arisen. Discussing such a situation it is said, at § 38 of the chapter on Contracts in 6 R. C. L., page 618, that: "In such cases if the right is absolutely contracted for, and the details are of a nature which courts may properly fix and settle, the courts should not hold the contract incomplete, but determine the right and also prescribe and settle the details."

As to the excessiveness of the verdict, but little need be said. Crowe testified that, assuming he was located for the year 1933, he had gotten in a supply of wood for fuel, which he was required to move when he was dispossessed. He had 1,200 bushels of corn in his crib and

300 bales of hay stored away. He was required to move all this, together with his farming implements and his household effects, in the dead of winter, and because of the condition of the roads he was able to make only one trip a day. Besides using his own wagon and team Crowe employed assistants, which cost him $50 in cash.

It was held, in the case of *McElvaney* v. *Smith*, 76 Ark. 468, 88 S. W. 981 (to quote a headnote), that: "For an unlawful eviction a tenant is entitled to recover as damages whatever loss results to him as a direct and natural consequence of the landlord's wrongful act; thus, if the rental value of the place from which he is evicted is greater than the price he agreed to pay, he may recover this excess, and, in addition thereto, any other loss directly caused by the eviction, such as the expense of removal to another place."

Under the rule thus announced, Crowe was entitled, not only to recover the money expended in moving, but he was entitled also to recover the value of his own time and team in so doing. We are therefore unable to say that the judgment is excessive.

As no error appears, the judgment must be affirmed, and it is so ordered.