ARKANSAS STATE HIGHWAY COMM'N *v.*
HUMBLE OIL COMPANY

5-5228 · 453 S. W. 2d 408

Opinion delivered May 11, 1970

*Thomas Keys* and *Billy Pease,* for appellant.

*Chowning, Mitchell, Hamilton & Burrow,* for appellee.

GEORGE ROSE SMITH, Justice. The highway department brought this action to condemn a 2.28-acre tract

owned by Nealie McMillan Hardy and others. The landowners had leased a small part of the land—a rectangle 25 by 50 feet—to Humble Oil Company for ten years. Humble had constructed on its plot a tall advertising sign, consisting of two substantial steel columns supporting a crossbar bearing the letters ESSO and arrows pointing toward a nearby Esso service station. The jury awarded $6,000 to the landowners and $1,100 to Humble. This appeal questions the latter verdict only.

Both in the trial court and here counsel for the highway department have insisted that Humble is entitled to nothing, because its sign is removable personal property. It is argued, on the authority of *Ark. State Highway Commn. v. Fox*, 230 Ark. 287, 322 S. W. 2d 81 (1959), that Humble's only measure of damages is the amount by which the fair market value of the lease exceeds the rent that would be payable during the remainder of the term. Humble did not offer any witness who attempted to evaluate the leasehold in exactly that manner. Moreover, says the appellant, it was held in the *Fox* case that in a condemnation suit a lessee cannot recover the cost of removing personal property from the land. The appellant concludes that there is therefore no support in the record for Humble's $1,100 verdict.

We cannot, in fairness, sustain that argument. The concrete foundation for Humble's sign was certainly not a removable chattel. The sign as a whole cost $6,663.08. From the undisputed proof the jury could have valued the concrete foundation at more than the amount of the verdict. The foundation consisted of two monolithic concrete blocks, each surmounted by an aboveground platform, poured at the same time, to which a steel column was bolted. Each block was 14½ feet square and 5 feet thick; each platform was 3 feet square and 18 inches thick. Thus the entire foundation comprised about 79 cubic yards of concrete, which, according to the proof, cost an average of $16.50 a yard, or a total of $1,303.50. The ten-year lease had almost

nine years to run at the time of the taking. Hence the unrecovered cost of the concrete alone, with no allowance for forms, steel, bolts, labor, etc., exceeded the amount of the verdict.

The evidence that we have narrated was a competent basis for the verdict, even if we assume that the ultimate issue was the value of the unexpired lease. Nichols points out, in discussing improvements on leased property, that "the value of the fixtures lost because incapable of removal is sometimes admitted, not as proving specific items of damage, but as a means of showing the value of the unexpired term." Nichols, Eminent Domain, § 13.121 (rev. 3d ed., 1962). This is unquestionably a case for resort to such evidence. In fact, Humble's property would obviously be taken without just compensation if it were denied recovery for its investment in the huge blocks that served as the base for its removable sign. We are not impressed by the appellant's argument that the foundation must be treated as being removable simply because Humble's lease allows it to remove its improvements at the end of the term. The truth is that the concrete blocks are not removable. It would be a manifest injustice to allow the State to take that property without compensating the lessee therefor, upon the legal fiction that the clause in the lease had changed the essential nature of the blocks.

There is a second issue—a minor one. Some weeks after the trial Humble, at the urgent request of the highway department, took down the sign (at a cost of $817) to clear the land for the proposed highway construction. In the court below the highway department sought to obtain possession of the sign itself, on the theory that the court had held it to be a part of the real estate. We do not find that positive ruling in the record, but in any event the court was right in holding that any such controversy is a matter for a separate lawsuit, since the only issue in an eminent domain proceeding is the value of the property taken. *Burton* v. *Ward,* 218 Ark. 253, 236 S. W. 2d 65 (1951).

Affirmed.

Brown, J., not participating.

Byrd, J., concurs.